### BRUNNER *v.* DOWNS *et al.*

(*Supreme Court, General Term, Fourth Department.* February, 1892.)

1. MUNICIPAL CORPORATIONS—ORDINANCES—FIRE LIMITS.

The ordinance adopted by the common council of Binghamton, May 22, 1867, as amended September 20, 1875, relating to fire limits, regulating building therein, and prescribing certain penalties for violation thereof, was fully legalized and confirmed under the revised city charter, (Laws 1888, c. 214,) giving the city council power to regulate by ordinance the fire limits, to make suitable provision with reference to the character of buildings therein, and legalizing all such prior ordinances of the city as the council is authorized to pass under the revised charter.

**2. SAME—PENALTY FOR VIOLATION.**
　　Section 8, tit. 3, of such revised charter, providing that every violation of the city ordinance relating to fire limits shall be a misdemeanor, and fixing the penalty therefor at not to exceed $100 fine nor 100 days' imprisonment, takes such offense out of the general provisions of Pen. Code, § 15, providing a penalty for misdemeanors, where no other is specifically prescribed.

**3. SAME—RECORDER—LIABILITY FOR CAUSING IMPRISONMENT.**
　　Under such revised charter, tit. 4, §§ 3, 4, conferring authority on the city recorder to hear, try, and determine, in a summary way, any complaint for violation of city ordinances and laws of the state, such recorder has jurisdiction over misdemeanors committed under such fire-limit ordinance, and is not answerable, in an action for false imprisonment, for acts committed in the exercise of such jurisdiction.

**4. APPEAL—REVIEW—MATTERS NOT APPARENT ON THE RECORD.**
　　Where a motion for a new trial on the minutes, and the order overruling such motion, specify no grounds on which they were made, the appellate court cannot review the order.

Appeal from circuit court, Broome county.

Action by John D. Brunner against Francis W. Downs and Francis T. Newell. From a judgment entered on a nonsuit, and from an order denying a new trial on the minutes, plaintiff appeals. Affirmed.

This was an action for alleged false imprisonment. The defense was that the defendant Downs was recorder of the city of Binghamton, and as such issued a warrant upon the complaint of defendant Newell for a violation of an ordinance of the city of Binghamton in respect to fire limits therein, in which warrant it was stated that Brunner, the plaintiff here, "did violate section 3 of an ordinance of the city of Binghamton entitled 'An ordinance providing for security against fires,' passed May 22, 1867, by building or repairing a building within the limit of said city, which has been damaged to more than fifty per cent. of its value, without the permission of the common council;" which warrant was issued against Brunner, the plaintiff here, on the 12th of February, 1889, by Downs, as recorder. In the affidavit or deposition presented to the recorder by Newell, it was alleged that Brunner and others "did violate section 3 of an ordinance of said city entitled 'An ordinance providing for security against fires,' passed May 22, 1867, by building or repairing a building which was injured by fire to more than fifty per cent. of its value, without permission of the common council of the city of Binghamton." The affidavit was sworn to by Newell on the 12th of February, 1889, before Downs, as recorder. Brunner was taken into custody by an officer, and went to the recorder's office, and proceedings were there had resulting in several adjournments, and finally in a trial before the recorder and a conviction, and a fine was imposed of $100, and an imprisonment not exceeding 20 days. After the termination of the proceedings before the recorder, an appeal was taken to the court of sessions of Broome county, where the conviction and judgment were reversed for errors in rulings in respect to the admission and rejection of evidence. The deposition, warrant, evidence, and proceedings before the recorder were offered in evidence. At the close of the evidence the court granted a nonsuit.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Babcock, Sperry & Van Cleve,* for appellant. *George B. Curtis,* for respondents.

HARDIN, P. J. By the evidence it appears that the common council adopted an ordinance, May 22, 1867, which was amended September 20, 1875, relating to the fire limits. That ordinance provided: "No building, or part of any building, unless constructed with outside and party wall of brick or stone, and fire-proof roof, shall, without the permission of the common council, given by a vote of two-thirds of all the members elected thereto, hereafter be erected or placed or moved from one point to another within, or moved from another place into, the following described territory, which shall constitute the fire

limits of the city of Binghamton, viz., the city limits of the city of Bingham-
ton shall constitute the fire limits of said city." The ordinance further pro-
vided as follows: "No building within said limits which may hereafter be
damaged by fire, to the extent of more than fifty per cent. of the value there-
of, shall be rebuilt, except in the manner and of the materials hereinbefore
authorized to be used, without the permission of the common council, given
by a vote of two-thirds of all the members elected thereto." By chapter 214,
Laws 1888, the charter of the city was revised, (Sess. Laws 1888, p. 321,) and
in subdivision 23 of section 5 of title 3 the common council is given power "to
regulate the thickness and manner of construction of brick, stone, or wooden
walls for building; to prohibit the construction of any such building or wall
as it may deem dangerous to life, and require the removal of any such so con-
structed; to prohibit the erection of sheds and fences in such a manner as un-
necessarily to vex or annoy the adjoining proprietors, and to require the re-
moval of any such so erected," etc; and in subdivision 25 power was given to
the common council "to extend and define, from time to time, the ground to
be included within the fire limits; to require, regulate, or prohibit all such
other acts to be done as it may deem proper to prevent the occurrence or to
provide for the extinguishment of fires in the city." In section 25 of the re-
vised charter (Sess. Laws 1888, p. 380) it was provided that "all ordinances
heretofore made by the common council of said city are hereby legalized and
confirmed, and declared legal and valid, provided they are such ordinances as
said common council is authorized to pass under this act as hereby amended;
and, whenever by said ordinances a penalty is prescribed for their violation,
the word 'penalty,' as therein used, shall be construed to mean and include
penalty or fine; and either a penalty or a fine, to the amount therein named,
may be imposed for the violation thereof, as the court or officer before whom
complaint shall be made may determine." In section 8 of title 3 power was
given to the common council to provide that imprisonment might be made
in the Broome county jail, and discretion was given to the court to impose
"punishment in the discretion of the court, but no penalty or fine shall exceed
one hundred dollars, (except in the case of constructing or repairing build-
ings within the fire limits, as hereinafter directed,) nor the length of such
imprisonment exceed one hundred days." Following this provision in the
charter is one as follows: "The violation of any such ordinance is hereby de-
clared to be a misdemeanor, and may be punished as such when the mode of
punishment shall not be prescribed in such ordinance. Violation of all or-
dinances and resolutions may also be restrained by the injunction order of
any court having jurisdiction," etc. In title 4 of the Revision, the recorder
is given jurisdiction to issue criminal process, and to hold a court of special
sessions; and by section 4 of title 4 he is authorized to "hear, try, and deter-
mine, in a summary way, any complaint for any violation of the laws of the
state, * * * or of the ordinances of the city." In section 3 the recorder
is authorized "to hear and entertain complaint, and conduct all examinations
in criminal cases." That section further provides that "the court of special
sessions held by said recorder shall also have jurisdiction of, and power to
hear and determine, charges for every other misdemeanor committed, or
charged to have been committed, within said city, for which the accused shall
elect to be tried before said court. Whenever a defendant tried before a court
of special sessions held by said recorder shall be convicted, said court shall
render judgment upon such conviction, and shall inflict such punishment, by
fine or imprisonment, or both, as any other court having jurisdiction of the
offense could inflict, and shall have the same jurisdiction to sentence and
punish the persons so convicted as courts of sessions have for the same of-
fense."

We are of the opinion that the recorder had jurisdiction over offenses known
as "misdemeanors" committed in the city of Binghamton in virtue of the pro-

visions of the statute which we have quoted. We are further of the opinion that section 25 of the charter "legalized and confirmed" the ordinances passed in respect to the fire limits already referred to. We are also of the opinion that section 8 of title 3 declares every violation of an ordinance to be a misdemeanor; and it further provides that such violation "may be punished as such when the mode of punishment shall not be prescribed in such ordinance." Section 8 of title 3 seems to limit the fine to be imposed for the violation of the ordinance in question to a sum not exceeding $100, and to declare that the imprisonment shall not exceed 100 days. We are inclined to think this limitation takes a violation of the ordinance in question out of the general provisions of section 15 of the Penal Code, which applies to cases where punishment is not specifically prescribed in a statutory provision or in that Code. The penalty imposed by the recorder did not exceed that permitted in section 8 of title 3. We are of the opinion that when the affidavit or deposition of Newell was presented to the recorder on the 12th of February, 1889, he was called upon to decide whether a misdemeanor had been committed within his jurisdiction, and that when he issued the warrant on that day for the arrest of the plaintiff he had jurisdiction of the subject-matter and of the person of the plaintiff, who was accused of violating section 3 of an ordinance of the city by "building or repairing a building which was injured by fire to more than fifty per cent. of its value, without permission of the common council of the city of Binghamton."

In *Harman* v. *Brotherson*, 1 Denio, 537, it was held that, although an affidavit was insufficient to sustain an order to hold to bail against a motion to set it aside, it protected the officer making it against an action for false imprisonment. In that case it was said: "If Brotherson had moved the court, the order to hold to bail would have been revoked. But it is a very different question whether the officer who made the order can be treated as a trespasser. It was a case where, upon proper proof, an order to hold to bail might be made. A *capias* and an affidavit were laid before the officer, the affidavit making out a fair case for the exercise of his judgment. The plaintiff might have been relieved, on motion, from the effect of the order, but he cannot maintain an action against the officer." A similar doctrine was laid down in *Laudt* v. *Hilts*, 19 Barb. 283, and many other cases bearing upon the question were referred to and commented upon in the opinion of HARDIN, P. J., delivered in *Austin* v. *Vrooman*, which opinion has been approved by the court of appeals, as appears by the opinion of PECKHAM, J., reported in 28 N. E. Rep. 477. Other questions are presented in the argument of the counsel for the appellant, but we find them quite satisfactorily discussed and disposed of in the opinion of PARKER, J., delivered in denying the motion for a new trial upon the minutes. The motion for a new trial on the minutes did not specify any grounds upon which it was made, nor does the order specify any grounds upon which the same was made; we therefore may not review the same. The appeal from the order should be dismissed, and the judgment entered upon the nonsuit should be affirmed, with costs. All concur.